UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| NICOLE D. ENGLEHARDT ) <br> (Social Security No. XXX-XX-8664), ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MICHAEL J. ASTRUE, Commissioner ) <br> of Social Security Administration, ) <br> ) <br> Defendant. ) | 3:09-cv-77-WGH-RLY |

**MEMORANDUM DECISION AND ORDER**

This matter is before the Honorable William G. Hussmann, Jr., United States Magistrate Judge, upon the Consents filed by the parties (Docket Nos. 7, 13) and an Order of Reference entered by District Judge Richard L. Young on September 22, 2009 (Docket No. 14).

**I.  Statement of the Case**

Plaintiff, Nicole D. Englehardt, seeks judicial review of the final decision of the agency, which found her not disabled and, therefore, not entitled to Disability Insurance Benefits ("DIB") under the Social Security Act ("the Act"). 42 U.S.C. §§ 416(i), 423(d); 20 C.F.R. § 404.1520(f).  The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g).

Plaintiff applied for DIB on February 22, 2006, alleging disability since May 31, 2001.  (R. 65-67).  The agency denied Plaintiff's application both initially and on reconsideration.  (R. 40-42, 45-48).  Plaintiff appeared and testified at a

hearing before Administrative Law Judge George Jacobs ("ALJ") on September 2, 2008. (R. 171-201). Plaintiff was represented by an attorney; also testifying was a vocational expert. (R. 171). On November 24, 2008, the ALJ issued his opinion finding that Plaintiff was not disabled because she retained the residual functional capacity ("RFC") to perform a substantial number of jobs in the regional economy. (R. 16-25). The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner. (R. 3-5). 20 C.F.R. §§ 404.955(a), 404.981. Plaintiff then filed a Complaint on June 15, 2009, seeking judicial review of the ALJ's decision.

## II.  Statement of the Facts

### A.  Vocational Profile

Born on August 5, 1981, Plaintiff was 27 years old at the time of the ALJ's decision, with a high school education. (R. 24). Her past relevant work experience included jobs as hand packer (light unskilled), cashier (light semi-skilled), nurse's aide (heavy semi-skilled), and home aide (heavy/very heavy semi-skilled). (R. 24).

### B.  Medical Evidence

#### 1.  Plaintiff's Mental Health

On February 20, 2006, Plaintiff presented to Sharon Sexson-Lyle, a nurse practitioner, with complaints of anxiety and depression. (R. 131). Plaintiff was taking Prozac and Xanax at that time to treat her symptoms of depression and anxiety. Sexson-Lyle reported that Plaintiff's anxiety episodes were becoming less frequent since a recent increase in Prozac. (R. 131).

On May 8, 2006, Albert Fink, Ph.D., conducted a mental status evaluation. (R. 155-56). Plaintiff reported that she had become quite anxious and depressed as a result of her vision problems. She reported that she had no history of psychiatric treatment, although she did receive Xanax from her primary care nurse practitioner. (R. 155). Dr. Fink noted that Plaintiff's grooming was excellent, that she was friendly and cooperative, and that she interacted easily. Dr. Fink reported that her mood was cheerful and her affect was bright. He noted that her speech was logical and sequential and that she spoke fluently with no evidence of unusual thought processes, bizarre ideation, or suicidal thinking. (R. 155). Based on his examination, Dr. Fink reported that Plaintiff was alert, oriented, and cognitively intact and that her memory, comprehension, and social skills were within normal limits. (R. 156). Dr. Fink stated that there was no evidence of psychotic symptoms. (R. 156). He also stated that, although Plaintiff reported increasing anxiety, her symptoms did not appear to be an impediment to her functioning. (R. 156). He did opine that Plaintiff should seek mental health treatment to avoid a downward spiral. (R. 156). Dr. Fink also opined that Plaintiff was competent to function in typical work environments and social settings. (R. 156). He diagnosed Plaintiff with Anxiety Disorder, Not Otherwise Specified, and assigned a Global Assessment of Functioning ("GAF") score of 68.[1] (R. 156).

---

[1] A GAF score of 61-70 indicates that Plaintiff generally functioned pretty well and had some meaningful interpersonal relationships with only some mild symptoms or some minor difficulties in social, occupational, or school functioning.

On September 13, 2006, Plaintiff presented to Sexson-Lyle for a follow-up of her anxiety disorder and other minor health issues. (R. 130). With regard to her anxiety, Plaintiff reported that she had discontinued taking her Prozac and that she had been doing well. Plaintiff stated that she occasionally took a Xanax pill at nighttime, but that she did not use it on a daily basis; she used the Xanax because her fiancee worked night shift and this helped her to calm down so she could sleep. (R. 130).

On December 27, 2006, Sexson-Lyle restarted Plaintiff on one Prozac tablet daily after Plaintiff had discontinued Prozac because of cost. (R. 129). Sexson-Lyle noted that Plaintiff had several environmental stress factors at that time. (R. 129).

On February 17, 2007, Plaintiff visited Sexson-Lyle and stated that she had again discontinued taking her Prozac. (R. 128). She reported that she had recently been having some nightmares that she thought were related to taking Prozac. Plaintiff also reported that she had recently separated from her live-in boyfriend and that her stress level was much, much better. Sexson-Lyle stated that Plaintiff had reacquainted herself with a high school boyfriend, and it appeared as if things were going quite well for her. (R. 128).

On May 22, 2007, Plaintiff reported that she injured herself while playing softball. (R. 128).

On May 23, 2008, Plaintiff reported that she was traveling out of town for the weekend. Sexson-Lyle recommended that Plaintiff increase her dosage of

Xanax in order to handle the suspected increase in stress associated with traveling. (R. 128).

### 2. Visual Problems

In September 2002, Steven Sampson, O.D., an optometrist, composed a short note stating that Plaintiff had hereditary optic atrophy. (R. 158).

In August 2005, Plaintiff complained of increasingly blurry vision in both eyes and occasional loss of peripheral vision to Robert Skowbo, O.D., an optometrist. (R. 165). Plaintiff requested a new prescription for her glasses. (R. 165). Dr. Skowbo noted that Plaintiff's prior eye exam from 2001 indicated that her corrected visual acuity had been 20/90 in the right eye and 20/80 in the left eye. (R. 165). Upon examination, Dr. Skowbo reported that Plaintiff's corrected visual acuity was currently 20/100 in her right eye and 20/80 in her left eye. (R. 165). Dr. Skowbo noted that Plaintiff's complaints of occasional loss of peripheral vision sounded like they could be associated with visual migraine headaches. (R. 165). Dr. Skowbo diagnosed Plaintiff with unspecified optic atrophy, nearsightedness, and astigmatism. (R. 165).

On May 9, 2006, Dion Dulay, M.D., an ophthalmologist, conducted a consultative visual examination. (R. 148-51). Based on his examination, Dr. Dulay determined that Plaintiff's best corrected visual acuity was 20/200 in the right eye and 20/100 in the left eye at a distance and 20/20 in both eyes at six inches. (R. 149). Dr. Dulay diagnosed Plaintiff with optic atrophy in both eyes. (R. 151).

### 3.  State Agency Review

On May 10, 2006, Mangala Hasanadka, M.D., completed a Physical Residual Functional Capacity Assessment form.  (R. 140-47).  Dr. Hasanadka opined that Plaintiff's far acuity, depth perception, and field of vision were limited.  (R. 143).  Dr. Hasanadka opined that Plaintiff should avoid driving commercial vehicles, hazardous heights and machinery, frequent reading of typewritten print, and inspecting/discriminating to handle small objects.  (R. 143).  He also opined that Plaintiff should avoid all exposure to environmental work hazards, including moving machinery, heights, driving, and working in congested areas with multiple people/machines.  (R. 144).  Dr. Hasanadka further opined that Plaintiff did not have any exertional, postural, manipulative, or communicative limitations.  (R. 141-44).  This assessment was affirmed by A. Lopez, M.D.  (R. 134).

On May 17, 2006, Dr. B. Randal Horton, completed a Psychiatric Review Technique form.  (R. 135-139).  He opined that Plaintiff did not have a severe mental impairment.  (R. 135).  Dr. Horton opined that Plaintiff had mild restriction of activities of daily living and difficulties in maintaining concentration, persistence, and pace, no difficulties in maintaining social functioning, and no episodes of decompensation.  (R. 137).  Dr. Horton concluded that Plaintiff's psychological condition was not severely limiting, noting that her activities of daily living were primarily limited by physical issues.  (R. 139).  Donna Unversaw, Ph.D., affirmed this assessment.  (R. 133).

### III.  Standard of Review

An ALJ's findings are conclusive if they are supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales,* 402 U.S. 389, 401 (1971); see also *Perkins v. Chater,* 107 F.3d 1290, 1296 (7th Cir. 1997).  This standard of review recognizes that it is the Commissioner's duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and decide questions of credibility.  *Richardson,* 402 U.S. at 399-400.  Accordingly, this court may not re-evaluate the facts, weigh the evidence anew, or substitute its judgment for that of the Commissioner.  *See Butera v. Apfel,* 173 F.3d 1049, 1055 (7th Cir. 1999).  Thus, even if reasonable minds could disagree about whether or not an individual was "disabled," the court must still affirm the ALJ's decision denying benefits.  *Schmidt v. Apfel,* 201 F.3d 970, 972 (7th Cir. 2000).

### IV.  Standard for Disability

In order to qualify for disability benefits under the Act, Plaintiff must establish that she suffers from a "disability" as defined by the Act.  "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A).  The Social Security regulations set out a sequential five-step test the ALJ is to perform in order to determine whether a claimant is disabled.  *See* 20 C.F.R. § 404.1520.

The ALJ must consider whether the claimant: (1) is presently employed; (2) has a severe impairment or combination of impairments; (3) has an impairment that meets or equals an impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) is unable to perform his/her past relevant work; and (5) is unable to perform any other work existing in significant numbers in the national economy. *Id.* The burden of proof is on Plaintiff during steps one through four, and only after Plaintiff has reached step five does the burden shift to the Commissioner. *Clifford v. Apfel,* 227 F.3d 863, 868 (7th Cir. 2000).

### V. The ALJ's Decision

The ALJ concluded that Plaintiff was insured for DIB through the date of the ALJ's decision. Plaintiff also had not engaged in substantial gainful activity since the alleged onset date. (R. 18). The ALJ found that, in accordance with 20 C.F.R. § 404.1520, Plaintiff had three impairments that are classified as severe: optic atrophy, anxiety, and obesity. (R. 18). The ALJ concluded that these impairments did not meet or substantially equal any of the impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 19). Additionally, the ALJ opined that Plaintiff's allegations regarding the extent of her limitations were not fully credible. (R. 22). Consequently, the ALJ concluded that Plaintiff retained the RFC for light work except she is limited to: occasional postural activities; no climbing of ladders, ropes, or scaffolds; no exposure to hazards, fumes, odors dust, and poor ventilation; no work involving driving, depth perception, peripheral vision, reading, or handling small objects; simple repetitive tasks; and

occasional contact with the public, co-workers, or supervisors.  (R. 20).  The ALJ opined that Plaintiff did not retain the RFC to perform her past work.  (R. 24).  However, Plaintiff retained the RFC to perform a substantial number of jobs in the regional economy including 2,400 laundry folder jobs, 1,300 sorter jobs, and 3,200 janitorial/cleaner jobs.  (R. 24-25).  The ALJ concluded by finding that Plaintiff was not under a disability.  (R. 25).

### VI.  Issues

Plaintiff has essentially raised four issues.  The issues are as follows:

1. Whether Plaintiff's vision impairment met Listing 2.02.

2. Whether Plaintiff's mental impairment met Listing 12.06.

3. Whether the ALJ's credibility determination is patently wrong.

4. Whether the ALJ failed to consider Plaintiff's headaches.

**Issue 1:  Whether Plaintiff's vision impairment met Listing 2.02.**

Plaintiff first argues that the ALJ erred by failing to find that her visual impairment met a listing.  In order for Plaintiff's vision to be severe enough to meet Listing 2.02, she must demonstrate that the "[r]emaining vision in the better eye after best correction is 20/200 or less."  20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 2.02.

In this case, the objective medical evidence supports the ALJ's finding that Plaintiff's impairment did not meet Listing 2.02.  In August 2005, Dr. Skowbo had noted that Plaintiff's prior eye exam from 2001 indicated that her corrected visual acuity had been 20/90 in the right eye and 20/80 in the left eye.  (R. 165).  Dr. Skowbo also examined Plaintiff and found her corrected visual acuity was

currently 20/100 in her right eye and 20/80 in her left eye. (R. 165). And, on May 9, 2006, Dr. Dulay examined Plaintiff and determined that her best corrected visual acuity was 20/200 in the right eye and 20/100 in the left eye at a distance and 20/20 in both eyes at six inches. (R. 149). Hence, three eye exams were conducted in which Plaintiff's corrected vision in her best eye was not 20/200 or worse, and Plaintiff's impairment fails to satisfy the criteria of Listing 2.02.

Plaintiff further argued that the ALJ failed to consider Plaintiff's use of a bioptic lense. However, there is absolutely no objective medical evidence in the record to demonstrate that her corrected vision measurements during any of her eye exams were obtained by using a bioptic lense. Plaintiff is correct that her eye exams would have included invalid measurements had they relied on her best corrected vision with the use of a bioptic lense. Plaintiff has simply failed to demonstrate such invalid testing occurred.

**Issue 2: Whether Plaintiff's mental impairment met Listing 12.06.**

Next, Plaintiff finds fault in the ALJ's determination that her mental impairment did not meet Listing 12.06 for anxiety-related disorders. In order to meet any of the 12.00 listings for mental impairments, an individual must either meet the criteria of subsections A and B or the criteria of subsection C of the listing. Or, in the case of Listing 12.08 for personality disorders, both the A and B criteria of the listing must be met. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1. In this case, Plaintiff clearly has been able to function independently outside of her home during the relevant time period and,

therefore, cannot satisfy the C criteria of Listing 12.06.  Hence, the focus is on whether or not Plaintiff has demonstrated that her mental impairment is severe enough that it meets the B criteria of the listing.  In order to meet the B criteria, Plaintiff must demonstrate:

> B. . . . at least two of the following:
>
> 1.  Marked restriction of activities of daily living; or
>
> 2.  Marked difficulties in maintaining social functioning; or
>
> 3.  Marked difficulties in maintaining concentration, persistence, or pace; or
>
> 4.  Repeated episodes of decompensation, each of extended duration;
> . . . .

*Id.* Plaintiff, in this case, has failed to demonstrate any episodes of decompensation.  Therefore, she must show "marked" limitations in at least two of the areas discussed above.  If the ALJ were to have fully credited Plaintiff's testimony at the administrative hearing, it is possible that Plaintiff could have demonstrated the requisite number of marked limitations.  However, as discussed below, the ALJ reasonably determined that Plaintiff's testimony was only partially credible.

Absent Plaintiff's testimony at the hearing, there is clearly substantial objective medical evidence in the record to support the ALJ's determination that Plaintiff's mental impairment did not lead to marked limitations.  The only examination of Plaintiff by a doctor occurred five years after her alleged onset date on May 8, 2006.  (R. 155-56).  Dr. Fink reported that Plaintiff was alert, oriented, and cognitively intact and that her memory, comprehension, and social

skills were within normal limits, and he opined that Plaintiff was competent to function in typical work environments and social settings. He assigned a GAF score of 68, which indicated extremely mild limitations. (R. 156). Furthermore the State agency doctors who reviewed Plaintiff's condition opined that Plaintiff was only mildly limited. (R. 133, 135-139). Based on these opinions as well as the fact that Plaintiff engaged in activities inconsistent with "marked" limitations, including playing softball, going on vacation, and working part-time for four of the years that she alleges a severe mental disability, the court concludes that the ALJ's determination is supported by substantial evidence and is affirmed.

**Issue 3: Whether the ALJ's credibility determination is patently wrong.**

Plaintiff also finds fault in the ALJ's assessment of her credibility. An ALJ's credibility determination will not be overturned unless it is "patently wrong." *Powers v. Apfel,* 207 F.3d 431, 435 (7th Cir. 2000). However, here the ALJ's "credibility" decision is not only an analysis of Plaintiff's credibility, but also an evaluation of Plaintiff's complaints of pain. Therefore, the ALJ must consider SSR 96-7p, the regulation promulgated by the Commissioner to assess and report credibility issues, as well as 20 C.F.R. § 404.1529(c)(3).

SSR 96-7p states that there is a two-step process that the ALJ engages in when determining an individual's credibility:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms. The finding that an individual's impairment(s) could reasonably be

expected to produce the individual's pain or other symptoms does not involve a determination as to the intensity, persistence, or functionally limiting effects of the individual's symptoms. If there is no medically determinable physical or mental impairment(s), or if there is a medically determinable physical or mental impairment(s) but the impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms, the symptoms cannot be found to affect the individual's ability to do basic work activities.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, *the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. This includes the medical signs and laboratory findings, the individual's own statements about the symptoms, any statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record.* This requirement for a finding on the credibility of the individual's statements about symptoms and their effects is reflected in 20 CFR 404.1529(c)(4) and 416.929(c)(4). These provisions of the regulations provide that an individual's symptoms, including pain, will be determined to diminish the individual's capacity for basic work activities to the extent that the individual's alleged functional limitations and restrictions due to symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the case record.

SSR 96-7p (emphasis added). SSR 96-7p further provides that the ALJ's decision regarding the claimant's credibility "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.*

Moreover, 20 C.F.R. § 404.1529(c)(3) states that when a claimant's subjective individual symptoms, such as pain, are considered, several factors are relevant including: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3)(i)-(vii).

In this case, the ALJ's credibility determination can be found in a detailed discussion at pages 21-23 of the record. Specifically, the ALJ explained Plaintiff's testimony as follows:

> The claimant stated she has anxiety all of the time. She stated that when she is anxious, she cannot breath [sic] and she vomits. She stated she is not good in crowds. She stated when she is with her family she gets antsy and has to smoke and move constantly and then she will request to go home. She stated traveling is a big issue. She cannot travel outside of her environment because it scares her. She stated there are times she will not leave her home other than to walk around her neighborhood.
>
> She stated she has panic attacks three times per month. She stated she gets hot, her heart races, she hyperventilates and vomits. She stated it takes her up to a half hour to calm down. She stated when she was working she had panic attacks once or twice per day because she could not handle the stress. She stated her last job, though she liked her work, was difficult due to her anxiety.

> She stated she has headaches that she has been told by her doctor are visual migraines. She stated she loses vision in the middle of her field of vision. She stated this prevents her from doing anything and lasts for up to two to three days, three or four times every six months. She stated her peripheral vision is not good. She stated that the worst part of her vision problems are problems with light, shade, different objects, thinking she sees things and not being able to see people. She stated she misreads things. She stated everything blends in and when she reads she does not remember what she has read.

(R. 22). The ALJ reasonably determined, based on Plaintiff's activities of daily living as well as the objective medical evidence, that Plaintiff's testimony was not fully credible. The ALJ did partially credit Plaintiff's testimony about her vision and limited her to no climbing of ladders, ropes, or scaffolds; no exposure to hazards; and no work involving driving, depth perception, peripheral vision, reading, or handling small objects. The ALJ also reasonably credited her testimony about anxiety and limited her to simple repetitive tasks and occasional contact with the public, co-workers, or supervisors. There was no objective medical evidence to support any further limitations.

**Issue 4: Whether the ALJ failed to consider Plaintiff's headaches.**

Finally, Plaintiff argues that the ALJ improperly failed to consider her headaches. Contrary to Plaintiff's claim, the ALJ did address Plaintiff's headaches (R. 19) and reasonably concluded that they were not a severe impairment. The ALJ's determination that Plaintiff's headaches did not impact her RFC is supported by substantial evidence. While there is one mention in the medical records by Dr. Skowbo that Plaintiff's complaints "could" be associated with visual migraine headaches (R. 165), there is no evidence in the record that Plaintiff was actually treated for headaches. Additionally, no doctor ever opined

-15-

that headaches had even a minimal impact on Plaintiff's ability to function. Thus, the ALJ's decision regarding Plaintiff's headaches is affirmed.

## VII.  Conclusion

The ALJ reasonably concluded that Plaintiff's impairments did not meet a listing.  Additionally, the ALJ conducted a thorough credibility determination.  Finally, the ALJ's determination concerning Plaintiff's headaches is supported by the objective medical evidence.  The final decision of the Commissioner is, therefore, **AFFIRMED.**

**SO ORDERED** the 9th day of April, 2010.

William G. Hussmann, Jr.
United States Magistrate Judge
Southern District of Indiana

**Electronic copies to:**

Eric Joseph Yocum
eric_yocum@msn.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov